UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAM INTERNATIONAL INC., d/b/a RAM
CREATIONS, a Michigan corporation; and
NARENDER AGARWAL, an individual,

    Plaintiffs,

v.

ADT SECURITY SERVICES, INC., a
Delaware corporation,

    Defendant.

                                  /

Case No. 11-10259

Honorable Nancy G. Edmunds

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [12]**

This matter comes before the Court on Defendant ADT Security Services, Inc.'s motion to dismiss under Rule 12(b)(6).  Following a burglary at their store, Plaintiffs Ram International, Inc. d/b/a Ram Creations and Narender Agarwal, owner of Ram Creations, filed this action against Defendant.  Plaintiffs allege that Defendant was negligent and/or grossly negligent, breached the parties' contract, committed fraud and made fraudulent misrepresentations, and falsely advertised Defendant's services.  For the reasons set forth below, Defendant's motion is GRANTED IN PART and DENIED IN PART.

**I.**    **Facts**

    **A.**    **Service Agreement**

Defendant is an alarm security company that provides alarm services, including installation of monitoring equipment and signal monitoring.  (Am. Compl. ¶¶ 3, 7.)  On July 11, 2008, Plaintiffs, the owners and operators of a jewelry store, entered into a Commercial Sales Proposal/Agreement ("Agreement") with Defendant to supply Plaintiffs with alarm monitoring services at Plaintiffs' jewelry store.  (Am. Compl. ¶ 4.)  The Agreement provided

that Plaintiffs would pay Defendant a monthly charge and Defendant would provide Plaintiffs with alarm services, a central station signal receiving, and notification service. (*Id.* ¶¶ 4, 36.) Plaintiffs allege that Defendant, while soliciting Plaintiffs' business, represented that: (1) Defendant's Services Customer Monitoring Centers would help protect Plaintiffs "24 hours a day, 7 days a week;" (2) Defendant's alarm system was efficient; and (3) the system had the ability to protect Plaintiffs' property. (*Id.* ¶¶ 55-60.)

The Agreement specified that the services would include "line security." (*Id.* at ¶ 6.) Defendant would also provide a "central station receiving and notification service, including a burglar alarm, hold up alarm and a supervisory." (*Id.* at ¶¶ 6-7.) The Agreement stated:

> A Signal Receiving and Notification Service shall be provided by [Defendant] . . . and in the event an alarm signal registers at [Defendant]'s central station, [Defendant] shall endeavor to notify the appropriate Police or Fire Department and the designated representative of [Plaintiffs]. In the event a burglar alarm signal or the signal registers at [Defendant]'s Central Station, [Defendant] at its sole discretion may endeavor to contact [Plaintiffs'] premises by telephone to verify that the alarm is not false. Failing to contact [Plaintiffs] promptly or questioning the nature of the response received upon such contact, [Defendant] shall endeavor to notify the appropriate Police Department or Fire Department in the event a supervisory signal or trouble signal registers at [Defendant]'s Central Station, [Defendant] shall endeavor to notify promptly the designated representative of [Plaintiffs].

(*Id.* at ¶ 8.) Defendant told Plaintiffs that the line security would detect if someone tried to circumvent the alarm system by cutting the phone lines at Plaintiffs' store. (*Id.* at ¶ 12.)

The Agreement contained a limitation of liability clause that limited Defendant's liability to 10% of the annual service charge or $1,000, whichever is greater. (*Id.* ¶¶ 51, 52.)

### B. Underwriters Laboratories (UL) Certificate

On April 10, 2009, Plaintiffs allege that they entered into a second binding agreement with Defendant entitled the "Central Station Burglar Alarm System Certificate" ("Certificate"). (Am. Compl. ¶¶ 9, 13; Am. Compl., Ex. B.) The UL Certificate includes Line Security. (Am. Compl. ¶ 9) Pursuant to Underwriters

2

Laboratories, Inc. UL 827, section 34.3.1 defines standard Line Security as "the signal transmission channel is supervised to detect an attempt to compromise the channel." (Am. Compl. ¶ 18.) The Certificate states:

> THIS CERTIFIES that the Alarm Service Company is included in Underwriters Laboratories, Inc. (UL) in its directory as qualified to use the UL Listing Mark in connection with the certificated Alarm System. This Certificate is the Alarm Service Company's representation that the Alarm System including all connecting wiring and equipment has been installed and will be maintained in compliance with the requirements established by UL.

(*Id.* at 15, 41.) Plaintiffs state that Defendant independently and separately provided the Certificate and that the Certificate has separate terms and conditions than the Agreement. (Am. Compl. ¶ 41.) Plaintiffs allege that the Certificate includes material representations about the alarm system, its capabilities, and UL standards, all of which were outside the scope of the original Agreement. (*Id.* at ¶¶ 13-14.)

Plaintiffs allege that Defendant issued the UL Certificate despite Defendant's knowledge that it did not install the Line Security, was not in compliance with the representations of the Certificate, and was not in compliance with UL standards. (*Id.* at ¶ 60.) Defendant stated that the telephone lines would be electronically and continuously monitored and that Defendant would immediately send a guard and the police upon receipt of an alarm signal or if the telephone lines were cut. (*Id.* at ¶ 60.) The UL Certificate does not contain any clauses limiting Defendant's liability. (*Id.* ¶ 46)

### C. Burglary of Plaintiffs' Store

On July 12, 2010, a store employee set the security alarm before closing Plaintiffs' store. (Am. Compl. ¶ 16.) Later that night, at approximately 12:45 a.m., three unknown individuals wearing ski masks and gloves broke into the store by prying open the back door. (*Id.*) The burglars disabled the alarm system. They removed an exterior security camera, smashed the outside siren, cut the store's phone lines, and destroyed the inside security system panel. (*Id.*)

The burglars stole approximately one million dollars in jewelry and collectables

and after the burglary, the store was left open for approximately ten hours. (Am. Compl. ¶ 17.) Defendant never reported the breaking and entering, never reported that the phone lines were cut, and failed to send a representative to Plaintiffs' store. (*Id.*)

Plaintiffs allege that Defendant did not install Line Security at Plaintiffs' store. (Am. Compl. ¶¶ 10, 12.) Plaintiffs also allege that Defendant received but never reported several alarm signals from Plaintiffs' store on the night of the burglary.[1] (*Id.* at ¶¶ 17, 24.) Based on the UL standards, the signals received by Defendant should have been treated as an alarm condition. (*Id.* at ¶ 20.)

## II.     Rule 12(b)(6) Motion to Dismiss Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).

A rule 12(b)(6) analysis generally forbids a court from considering documents

---

[1] Based on two Service Tickets issued by Defendant, on July 14, 2010, Defendant received "LRcomfl" signal, indicating that "a long range radio transmitted a communication failure signal to [Defendant's] Central Station." (Am. Compl. ¶ 23.)

outside the pleadings, but when a document is referred to in the complaint and is central to the plaintiff's claim, the court may consider it. *Greenberg v. Life Insurance Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). This does not convert a motion to dismiss into a motion for summary judgment. *Id.*

**III.   Analysis**

Plaintiffs' Amended Complaint contains six counts against Defendant: (1) negligence and gross negligence, (2) breach of contract, (3) breach of UL Certificate, (4) limitation of liability clause is a penalty, (5) fraud and fraudulent misrepresentation, (6) false advertising, and (7) unconscionability and contract of adhesion. These counts can be categorized into tort claims and contract claims.

    **A.   Tort Claims**

Plaintiffs allege three tort claims: negligence and gross negligence, fraud and fraudulent misrepresentation, and false advertising. Defendant argues that the claim for negligence and gross negligence should be dismissed because Defendant did not owe Plaintiffs any independent duty. Defendant also argues that the fraud and fraudulent misrepresentation claims should be dismissed because Plaintiffs' allegations are based solely upon unfulfilled promises to perform future acts and failed to plead the fraud claims with sufficient particularity.

In order for a party to bring an action in tort, there must be a duty independent of any contract. *Haas v. Montgomery Ward & Co.*, 812 F.2d 1015, 1016 (6th Cir. 1987); *PHD Michigan v. Outfitters Assoc. of Am.*, No. 04-73964, 2006 WL 2042515, at *5 (E.D. Mich. July 20, 2006) (Edmunds, J.); *Allendale Mut. Ins. Co. v. Triple-S Tech., Inc.*, 851 F. Supp. 277, 280 (W.D. Mich. 1993) (finding that the tort action must arise independent of the existence of the contract). The Michigan Supreme Court has held that "a tort action will not lie when based solely on the nonperformance of a contractual duty." *Fultz v. Union Commerce Associates*, 683 N.W.2d 587, 591 (Mich. 2004). In *Fultz*, the

Court established that a defendant's conduct can give rise to both a tort and breach of contract action when "the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on a contract will lie." *Id.* at 592.

The Sixth Circuit has further stated that "under Michigan law, in order for an action in tort to arise out of a breach of contract, the act must constitute (1) a breach of duty separate and distinct from the breach of contract and (2) active negligence or misfeasance." *Spengler v. ADT Sec. Serv.*, 505 F.3d 456, 457-58 (6th Cir. 2007) *aff'g* 2006 WL 3004088 (E.D. Mich. Oct. 20, 2006) (Cleland, J.) (internal citations omitted). In a case where there is no independent duty and a broken promise to perform the contract is the only violation, any liability must rest solely on breach of the contract. *Spengler*, 505 F.3d at 458.

Applying this analysis here, the Court examine's Plaintiffs' tort claims.

### 1. Negligence and Gross Negligence

Plaintiffs allege that Defendant committed negligence and gross negligence by failing to; (1) provide a reliable security service, (2) send a representative once an intrusion happened, and (3) inform police of an unauthorized entry. Defendant argues that Plaintiffs' negligence and gross negligence claims fail because Defendant's obligations arise solely from its contract with Plaintiffs.

Defendant's duties to provide the above-named services arise solely from the Agreement between Plaintiffs and Defendant. There is no duty at common law for Defendant to provide alarm services to Plaintiffs. In the Complaint, Plaintiffs state that Defendant "failed to perform the duties it committed itself to" (Am. Compl. ¶ 27) and that Defendant was deceptive and grossly negligent in failing to install the Line Security because of its "failure by [Defendant] to perform under its contract" (Id. at ¶ 29).

6

Even Plaintiffs, then, state Defendant's failure to adequately provide services as a failure to comply with the obligations contracted for under the Agreement. The tort claims for negligence and gross negligence rest upon Defendant's failure to meet the contractual obligations of the Agreement and the UL Certificate. Even taking the factual allegations in the light most favorable to Plaintiffs, there is no independent duty or adequate ground for a claim of negligence or gross negligence.

Plaintiffs argue that their claim of gross negligence need not arise from an independent duty. However, in *Spengler*, the Sixth Circuit upheld the dismissal of a negligence and gross negligence claim because there was no independent duty outside of the contract. The plaintiff in *Spengler* pled both ordinary and gross negligence, so Plaintiffs' argument that the *Spengler* holding only applies to ordinary negligence is unfounded.

The Court GRANTS Defendant's motion to dismiss Plaintiffs' negligence and gross negligence claims.

### 2. Fraud and Fraudulent Misrepresentations

Plaintiffs allege three separate instances of fraud: (1) fraud in the inducement, (2) fraudulent misrepresentation in the Agreement, and (3) fraudulent misrepresentation in the UL Certificate. Defendant argues that all of Plaintiffs' fraud claims fall under breach of contract and that Plaintiffs have not pled fraud with the necessary specificity of Federal Rule of Civil Procedure 9(b).

Under Michigan law, to constitute actionable fraud, Plaintiffs must show:

> (1) that Defendant made a material representation; (2) that it was false; (3) that when [Defendant] made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that [Defendant] made it with the intention that it should be acted upon by Plaintiff[s]; (5) that Plaintiff[s] acted in reliance upon it; and (6) that [Plaintiffs] thereby suffered injury.

*Hi-Way Motor Co. v. Int'l Harvester Co.,* 247 N.W.2d 813, 816 (Mich. 1976) (citations omitted). "[T]he absence of any one of [these elements] is fatal to a recovery." *Id.*

7

Michigan law requires that "an action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact. Future promises are contractual and do not constitute fraud." *Id.* Additionally, "an action for fraud may not be predicated upon the expression of an opinion or salesmen's talk in promoting a sale, referred to as puffing." *Van Tassel v. McDonald Corp.*, 407 N.W.2d 6, 8 (Mich. Ct. App. 1987) (holding statements that the store was a gold mine and Baskin-Robbins has an excellent product were opinion or puffing). An "honest expression of opinion will not, although proved erroneous, be regarded as fraud." *Id.* at 8.

### i. Fraud in the Inducement

First, Plaintiffs allege that Defendant, while soliciting Plaintiffs' business, made several misrepresentations through its advertisements and statements to induce Plaintiffs to contract with Defendant. Specifically, Plaintiffs allege that Defendant fraudulently represented that: (1) Defendant's Services Customer Monitoring Centers help protect customers "24 hours a day, 7 days a week;" (2) Defendant's alarm system was efficient and able to protect Plaintiffs' property; and (3) Defendant's monitoring services were reliable. (Am. Compl. ¶¶ 55-57.)

Michigan recognizes a cause of action for promissory fraud in the inducement. This occurs when "a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *Chesterfield Exchange, LLC v. Sportsman's Warehouse, Inc.*, 572 F.Supp.2d 856, 865 (E.D. Mich. 2008). This provides an exception to the requirement that the fraudulent misrepresentation must be related to a past or existing fact. However, Defendant "must allege facts from which it could be concluded that [its] reliance was reasonable." *Issa v. Provident Funding Group, Inc.*, No. 09-12595, 2010 WL 538298, *5 (E.D. Mich. Feb. 10, 2010) (citing *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 553-54 (Mich. Ct. App. 1999). Under Michigan law, "reliance upon oral representations

or prior documents, even if false, is unreasonable if the party enters into a subsequent agreement." *Crofton v. Bank of Am. Home Loans*, No. 11-10124, 2011 WL 1298747, at *8 (E.D. Mich. March 31, 2011) (Edmunds, J.) (citing *Cook v. Little Caesar Enter., Inc.*, 210 F.3d 653, 658 (6th Cir. 2000).).

The Agreement between Plaintiffs and Defendant precludes Plaintiffs from relying on the statements and representations above. Section N of the Agreement, in all-capital letters, states:

> THIS AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT BETWEEN [PLAINTIFFS] AND [DEFENDANT] IN EXECUTING THIS AGREEMENT. [PLAINTIFFS ARE] NOT RELYING ON ANY ADVICE OR ADVERTISEMENT OF [DEFENDANT]. [PLAINTIFFS] AGREE[] THAT ANY REPRESENTATION, PROMISE, CONDITION, INDUCEMENT OR WARRANTY, EXPRESS OR IMPLIED, NOT INCLUDED IN WRITING IN THIS AGREEMENT SHALL NOT BE BINDING UPON ANY PARTY . . .

This merger and integration clause explicitly states that the Plaintiffs agree that they are not relying on any statements and representations made outside of the Agreement. Because Plaintiffs signed the Agreement, they cannot show that their reliance on the alleged fraudulent misrepresentations, made before the Agreement, was reasonable.

Additionally, Defendant's statements that its products were efficient, reliable, and would protect Plaintiffs' property are examples of opinion and puffery. The fact that Plaintiffs allege that Defendant's services failed to be reliable and efficient in this instance cannot form the basis for a fraud claim. As stated above, an opinion will not, although proved erroneous, be regarded as fraud. *Van Tassel*, 407 N.W.2d at 8.

Even if Plaintiffs were to survive the obstacles above, Plaintiffs have failed to state the fraud claim with sufficient particularity. To satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b), at a minimum, Defendant "must allege the time, place and contents of the misrepresentations upon which they relied." *Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008) (internal quotation marks and citation omitted). Plaintiffs have failed to do that here.

Defendant's motion to dismiss Plaintiffs' claims for fraudulent inducement is GRANTED.

### ii.     Fraudulent Statements in the Agreement

Plaintiffs allege that Defendant, in the Agreement, fraudulently represented that: (1) Defendant would electronically and continuously monitor Plaintiffs' telephone lines; (2) upon receipt of an alarm signal, Defendant would immediately dispatch the police and a guard to Plaintiffs' premises; and (3) if the telephone lines were cut, Defendant would immediately receive notice and dispatch the police and a guard to Plaintiffs' premises. These statements were made in the "services to be provided" and "terms and conditions" sections of the Agreement.

As stated above, an action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact. Each of these representations relates to services the Defendant *would* perform pursuant to the Agreement. The statements are Defendant's future promises to Plaintiffs. Future promises are contractual and do not constitute fraud. *Hi-Way Motor Co.,* 247 N.W.2d at 816. The fact that Defendant did not satisfy these representations may be the basis for a breach of contract claim, but it cannot constitute a claim for fraud.

Defendant's motion to dismiss Plaintiffs' claims for fraudulent statements in the Agreement is GRANTED.

### iii.    Fraudulent Statements in the UL Certificate

Plaintiffs allege that Defendant made fraudulent representations in the UL Certificate. Specifically, Plaintiffs allege that Defendant (1) falsely claimed that its alarm system will meet the UL standards and (2) failed to install "Line Security" equipment at the Plaintiffs' premises, despite the representation in the UL Certificate that "all connecting wiring and equipment has been installed."

In relevant part, the UL Certificate states, "This Certificate is the *Alarm Service Company*'s representation that the *Alarm System* including all connecting wiring and equipment has been installed and will be maintained in compliance with requirements established by UL."[2] There are two separate representations within this sentence: (1) the alarm system, including all connecting wiring and equipment has been installed and (2) the alarm system will be maintained in compliance with requirements established by UL.

The first representation, asserting that the UL Certificate serves as Defendant's representation that the Alarm System including all connecting wiring and equipment *has been installed*, (emphasis added) fits the criteria required under *Hi-Way Motor* for a fraud claim. Taking the factual allegations in the light most favorable to Plaintiffs, this statement is a false, material representation of a past or present fact.

However, Plaintiffs failed to allege that Defendant's owed an independent duty outside the contract. There is no common law duty requiring Defendant to install wiring and equipment. Plaintiffs' claims are based completely on the alleged nonperformance of a promise in the Agreement and UL Certificate and cannot form the basis of a fraud claim. *See PHD Michigan*, 2006 WL 2042515, at *6. The need for an independent basis for a tort claim has been long-established and allowing every broken promise in an agreement to become an actionable fraud claim would allow contract law to "drown in a sea of tort." *Huron Tool and Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 546 (1995). A fraud claim cannot be brought where it is factually indistinguishable from a breach of contract claim. *Id.* Here, Plaintiffs' fraud claim is factually indistinguishable from a breach of contract claim. This is clear by the fact that Plaintiffs allege the exact same facts and alleged misrepresentation in Count III of the Amended Complaint for "Breach of the UL Certificate."

---

[2] This is the only sentence in the UL Certificate that is an affirmative representation. The remainder of the UL Certificate contains disclaimers, limitations of liability, definitions, and standards.

The second representation in the UL Certificate is that the Alarm System *will be* maintained in compliance with the UL standards (emphasis added).  This is a future promise that cannot give rise to a claim for fraud.  *Hi-Way Motor Co.,* 247 N.W.2d at 816.

Plaintiffs' allegations of fraud are not based on independent duties and are not factually distinguishable from the breach of contract claims.  Therefore, they do not form the basis for a tort claim.  Defendant's motion to dismiss Plaintiffs' claims for fraudulent statements in the UL Certificate is GRANTED.

### 3. False Advertisement

Plaintiffs allege that Defendant created an image that implied that their system is reliable and never fails by advertising: (1) it would be there for its clients "24 hours a day, 7 days a week," (2) it has Rapid Alarm response, and (3) it offers 24-hour monitoring by trained professionals.  Defendant argues that none of these statements are fraudulent because the company does, in fact, provide 24-hour monitoring and has "Rapid Alarm response."

Michigan law states, "A person shall not knowingly make, publish, disseminate, circulate, or place before the public an advertisement which contains a statement or representation which is untrue, deceptive, or misleading."  Mich. Comp. L. § 445.356(6)(1).  "In determining whether advertising is deceptive or misleading, the extent to which the advertising fails to reveal facts which are material in light of the representations made or suggested in a positive manner shall be taken into account."  Mich. Comp. L. § 445.356(6)(3).  Michigan courts have established that claims for false advertising are to be construed with reference to the common-law tort of fraud and that opinion or puffery is not actionable.  *Overton v. Anheuser-Busch Co.*, 517 N.W.2d 308, 309 (Mich. Ct. App. 1994) (holding that a beer company's advertisements suggesting that using the company's products will make all of the plaintiff's fantasies come true is

12

mere puffery).

Plaintiffs do not allege that Defendant does not offer 24-hour monitoring to its clients, nor do they allege that Defendant's do not offer "Rapid Alarm response." Rather, Plaintiffs allege that Defendant's advertising gives an impression that its product never fails. However, an "honest expression of opinion will not, although proved erroneous, be regarded as fraud." *Van Tassel*, 407 N.W.2d at 8. Additionally, a claim for fraud cannot be based on puffery or the expression of an opinion or salesmen's talk in promoting a product or sale. *Id.*

The Court GRANTS Defendant's motion to dismiss Plaintiffs' claims based on false advertising.

### B. Breach of Contract Claims

Plaintiffs allege that on the night of the burglary, in breach of the Agreement, Defendant failed to report the unauthorized entry, never contacted the police or owner, and did not send a representative to the premises. Defendant argues that Plaintiffs' claims are barred by the terms of the Agreement. Alternatively, Defendant argues that if the claims are not completely barred, then they are limited to $1,000. Plaintiffs argue, however, that the language of the Agreement is ambiguous and the limitation-of-liability clause is a penalty.

Whether a contract is ambiguous is a question of law that will be determined by the court. *Steinmetz Elec. Contractors Ass'n v. Local Union No. 58,* 517 F.Supp. 428, 432 (E.D. Mich. 1981); *Petovello v. Murray,* 362 N.W.2d 857, 858 (Mich. Ct. App. 1984); *Fragner v. Am. Comm. Mut. Ins. Co.,* 502 N.W.2d 350, 352 (Mich. Ct. App. 1993). A contract which admits of but one interpretation is unambiguous. *Fragner,* 502 N.W.2d at 352. In contrast, a contract provision is ambiguous if it is capable of two or more constructions, both of which are reasonable. *Petovello,* 362 N.W.2d at 858. If a contract is clear and unambiguous, the court must enforce the contract as written,

according to its plain meaning, *Clevenger v. Allstate Ins. Co.,* 505 N.W.2d 553, 557 (Mich.1993). A court should read the entire contract as a whole to determine the meaning of its provisions. *Old Kent Bank v. Sobczak*, 620 N.W.2d 663, 667 (Mich. Ct. App. 2000).

### 1. Does the Agreement Preclude Plaintiffs' Claims?

Section E of the Agreement states, "[Plaintiffs] agree to look exclusively to [Plaintiffs'] insurer to recover for injuries or damage in the event of any loss or injury and release[s] and waive[s] all rights of recovery against [Defendant] arising by way of subrogation." The first portion of this exculpatory clause states that the customer will not look to anyone besides the customer's insurer for any damages. Read alone, this portion of the clause supports the Defendant's argument that Plaintiffs are barred from all claims. However, the second portion of the sentence states that the customer releases Defendant from any right of recovery arising from subrogation. If the two clauses are read separately and independently, then the Agreement appears to bar all recovery. However, if "arising by way of subrogation" extends to the first part of the sentence as well as the second, then this exculpatory clause merely precludes the right of recovery that an insurance company would gain through subrogation.

The Court finds that both of these readings are reasonable and, therefore, the clause is ambiguous. Looking further down in the same provision, there is a liquidated damages clause, stating, "If [Defendant] should be found liable for loss, damage or injury due to a failure of service or equipment in any respect, its liability shall be limited to a sum equal to 10% of the annual service charge or $1,000." This limitation-of-liability clause supports the interpretation that the first clause does not preclude all recovery and should be limited to that recovery based on subrogation. If the first sentence served to bar all recovery, then there would be no need for a clause limiting liability. The Court finds that the first sentence precludes recovery that arises from

14

subrogation and does not preclude all recovery.

Reading the contract as a whole, the Court finds that the Agreement does not completely bar all of Plaintiffs' claims. Defendant's motion to dismiss Plaintiffs' breach of contract claims is DENIED.

### 2. Limitation-of-Liability Clause

Having determined that Plaintiffs' claims are not completely barred, the Court must determine whether the Limitation-of-Liability clause limits Plaintiffs' recovery to $1,000. Plaintiffs allege that this provision is not reasonable because the actual damages contemplated could have been ascertained with certainty when the Agreement was made and the amount stipulated is not proportionate to the probable loss.

A liquidated damages provision is "an agreement by the parties fixing the amount of damages in the case of a breach of that contract." *Papo v. Aglo Rest. of San Jose, Inc.*, 386 N.W.2d 177 (Mich. Ct. App. 1986). A statement that the amount is not a penalty is consistent with liquidated damage clause requirements. *Moore v. St. Clair Cnty.*, 328 N.W.2d 47, 49-50 (Mich. Ct. App. 1982). However, merely reciting that the provision is not a penalty is insufficient to establish that it is not. *Id.* In order for a liquidated damages clause to be enforceable, the value of it must be reasonable at the time it was entered into. *Solomon v. Dep't of State Highways & Transp.*, 345 N.W.2d 717, 719 (Mich. Ct. App. 1984).

In this case, on the front page of the Agreement, under "Customer Acceptance" and directly above Plaintiffs' signature, the Agreement states, "ATTENTION IS DIRECTED TO THE WARRANTY, LIMIT OF LIABILITY AND OTHER CONDITIONS ON REVERSE SIDE." Although the type is the same size as the surrounding text and relatively small, this sentence is written in bold and all-capital letters. The limit of liability clause states:

> [Plaintiffs] do not desire this contract to provide for full liability of [Defendant] and agree that [Defendant] shall be exempt from liability for loss, damage, or injury due directly or indirectly to occurrences or consequences therefrom, which the service or system is designed to detect or avert, that if [Defendant] should be found liable for loss, damage or injury due to a failure of service or equipment in any respect, its liability shall be limited to a sum equal to 10% of the annual service charge or $1,000, whichever is greater, as the agreed upon damages and not as a penalty . . .

Michigan courts have upheld the validity of liquidated damages clauses in alarm service contracts. The Michigan Court of Appeals upheld a liquidated damages clause in a security services contract that was strikingly similar to the one in this case. *See St. Paul Fire & Marine Insurance Co. v. Guardian Alarm Co. of Michigan*, 320 N.W.2d 244 (Mich. Ct. App. 1982). The provision in *St. Paul* limited the plaintiff's recovery to six monthly payments or $250, whichever is less. *Id.* at 246. The court rejected the plaintiff's argument that the clause was unenforceable because the damages were reasonably ascertainable, stating:

> [A] burglar alarm company is not in the insurance business. The actions which plaintiff suggests could have been taken are exactly the kind of things done by insurance companies. Moreover, in making these suggestions plaintiff implicitly acknowledges that without such actions potential damages are not readily ascertainable. Thus the liquidated damages clause is enforceable.

*Id.* at 247. The Sixth Circuit also upheld the validity of a similar clause, ruling that a clause limiting the defendant's liability to the greater of $500 or 10% of the annual service charge was enforceable and not a penalty. *Spengler*, 505 F.3d at 458.

Here, Plaintiffs argue that the liquidated damages provision should not be enforced because the actual damages would have been ascertained with reasonable certainty when the Agreement was made. However, just as in *St. Paul*, Plaintiffs' argument is unpersuasive because Defendant is not an insurance company. In fact, Section E of the Agreement states:

> It is understood that [Defendant] is not an insurer, that insurance, if any, shall be obtained by [Plaintiffs] and that the amounts payable to [Defendant] hereunder are based upon the value of the services and the scope of liability as herein set forth and are unrelated to the value of

16

[Plaintiffs'] property or property of others located in [Plaintiffs'] premises. Plaintiffs agreed that Defendant was not taking the place of an insurer and that they would obtain any desired insurance for their premises.

The Court upholds the enforcement of the Agreement's liquidated damages clause and Defendant's motion to dismiss Plaintiffs' claims under the Agreement, to the extent that they exceed $1,000, is GRANTED.

### 3. Unconscionability

Plaintiffs allege that the Agreement is unconscionable because Defendant drafted the Agreement and offered it on a "take it or leave it" basis, the language is inconspicuous, Plaintiffs did not have an opportunity to modify the Agreement, and Defendant had a much superior bargaining power.

Michigan applies a two-prong test of "procedural" and "substantive" unconscionability. *Andersons, Inc. v. Horton Farms*, 166 F.3d 308, 322 (6th Cir. 1998). Both must be found to exist for an agreement to be considered unconscionable. *Id.*

> Substantive unconscionability exists where the challenged term is not substantively reasonable. However, a contract or contract provision is not invariably substantively unconscionable simply because it is foolish for one party and very advantageous to the other. Instead, a term is substantively unreasonable where the inequity of the term is so extreme as to shock the conscience.

*Clark v. Daimler Chrysler Corp.*, 706 N.W.2d 471, 475 (Mich. Ct. App. 2005) (internal citations omitted).

Here, Plaintiffs have not shown substantive unconscionability. Plaintiffs do not address the substantive unconscionability of any specific clauses in either their amended complaint or their response brief to Defendant's motion to dismiss. The Michigan Court of Appeals, in *St. Paul Fire*, in considering whether the limitation of liability clause was unconscionable, stated:

> Reasonableness is the primary consideration. The contract clause limiting defendant's liability to the aggregate of six monthly payments or $250 is manifestly reasonable under the circumstances of this case. Defendant is not

17

> in the insurance business. Rather it provides an alarm service for a specific sum. That sum is not a premium for theft insurance. The contract in question made this clear. Under these circumstances a clause limiting defendant's liability is not unconscionable.

*St. Paul Fire*, 320 N.W.2d at 247. Additionally, the court in *St. Paul Fire* upheld the liquidated damages provision despite the plaintiff's argument that the contract was a form contract that the parties did not individually negotiate. *Id.* at 246 (upholding the liquidated damages provision despite the plaintiff's assertion that the agreement was an unconscionable adhesion contract).

Following *St. Paul*, this Court finds that the limitation of liability clause is not so unreasonable that it shocks the conscience. *Clark*, 706 N.W.2d at 475. Taking the factual allegations in the light most favorable to Plaintiffs, there is no adequate ground for substantive unconscionability. Because a party must satisfy both the procedural and substantive prongs, the Court need not discuss whether Plaintiffs have appropriately pled procedural unconscionability.

### 4. Breach of the UL Certificate

Plaintiffs argue that, regardless of the limited liability clause in the Agreement, they have stated a claim for relief because the Certificate is a separate, binding contract that does not contain the same limiting clauses. Plaintiffs allege that in violation of that agreement, Defendant failed to comply with the representations that were codified in the UL Certificate and UL Standards. Specifically, Plaintiffs allege that Defendant violated UL 681 and UL 827 standards and failed to install the Line Security equipment. Defendant contends that the Agreement included the installation of line security and the UL Certificate, so the UL Certificate does not create a separate and independent contract.

Plaintiffs assert that there are terms and representations in the UL Certificate that are outside the scope of the original Agreement. Plaintiffs also assert that the UL Certificate provided for new obligations between Plaintiffs and Defendant.

The original Commercial Sales Proposal/Agreement between the parties states, "[Defendant] proposes to install or cause to be installed the equipment and furnish the services indicated herein:" followed by a list of handwritten items that indicate those things that are already installed, those things that are to be installed, and other specifics of the contract. One of the items listed is, "Upgrade UL Certificate to Include Line Security." Underneath the section for handwritten specifics of the contract, the Agreement states, "Customer acknowledges that: . . . (c) Customer desires and has contracted for only the equipment and services itemized on this Agreement."

The UL Certificate, then, was contemplated and provided for by the parties in the original Agreement. The UL Certificate was executed nine months later and is a 2-page document that provides, in relevant part:

> THIS CERTIFIES that the Alarm Service Company is included in Underwriters Laboratories, Inc. (UL) in its directory as qualified to use the UL Listing Mark in connection with the certificated Alarm System. This Certificate is the Alarm Service Company's representation that the Alarm System including all connecting wiring and equipment has been installed and will be maintained in compliance with the requirements established by UL.

The remainder of the first page of the UL Certificate is disclaimers, the limitations of liability for Underwriters Laboratories Inc., the alarm system description, and the parties names and addresses. The second page lists definitions and standards.

The UL Certificate does not create a new contract between the parties, but rather carries out the contract that they already agreed to in the Agreement. There are representations and obligations contained in the UL Certificate and the UL standards that must be followed. These, however, do not make up a new contract and are merely the written expression of the terms contemplated by the parties when they contracted for "Upgrade UL Certificate to Include Line Security" in the original Agreement.

Although Plaintiffs assert that the UL Certificate is a separate and independent contract, in their response to the motion to dismiss, Plaintiffs categorize the UL Certificate

19

as a written modification of the original contract. (Pl. Resp. 9.) Assuming *arguendo* that the UL Certificate served as a modification, this would still not create a separate contract, it would only update the Agreement as it already existed.

The UL Certificate is not a separate and independent contract and is, therefore, subject to the liquidated damages clause. Defendant's motion to dismiss with prejudice as to Plaintiffs' claims under the Agreement, to the extent that they exceed $1,000, is GRANTED.

### IV. CONCLUSION

For the above-stated reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: November 3, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 3, 2011, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

20